THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN WINSTON, Appellant.

First Department, June 10, 1976

*Jane E. Berger* of counsel *(William J. Gallagher* and *William E. Hellerstein,* attorneys), for appellant.

*Brian Rosner* of counsel *(Peter L. Zimroth* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

Lynch, J. The defendant appeals his conviction, after a jury trial, of assault in the second degree, attempted grand larceny in the third degree and two counts of attempted robbery in the second degree. The District Attorney concedes and we agree that the attempted grand larceny would be dismissible as an inclusory concurrent count, under CPL 300.40, of the attempted robbery *(People v Rivera,* 46 AD2d 642).

Although there were other witnesses to the defendant's flight from the crime area—a flight that the defendant testified was caused by panic when he realized that the victim thought that he was in league with one who had attempted the robbery and raised a hue and cry against him—there were only two witnesses to the crime itself, the victim who inculpated the defendant and the defendant who portrayed himself to have been an innocent bystander. To reach a verdict of

guilt, the jury had to grant credibility to the victim and deny it to the defendant. Several errors attended the trial and, since we cannot say that they did not affect the resolution of this basic credibility question, we cannot hold them harmless *(People v Duncan,* 13 NY2d 37, 42).

A jackknife had been found in the defendant's pocket when he was arrested. No account by the victim at the trial nor any other time mentioned a knife, nor did any count of the indictment. The prosecutor brashly displayed it before the jury, announced that it was "a dagger" with the words "Big Bruiser" on it, and then elicited testimony that it had been found on the defendant. This irrelevance can have had no other purpose than to prejudice the jury against the defendant. (See *People v Freytes,* 48 AD2d 807.)

The defendant admitted that, although he was now free of drugs, he had used them formerly including the time that he had worked for the Burns Security Agency, but that he had not been asked about drugs when he had applied for that job. Through the device of couching it in repeated questioning, the prosecutor himself testified that the Burns application form contained a question about drug usage and concluded for the jury that the defendant must have lied when he answered it. Such prosecutorial testimony, without more, has been held reversible error in a case similarly involving a credibility question between the defendant and a victim *(People v Duncan, supra;* see, also, *People v Petrucelli,* 44 AD2d 58).

The prosecutor cross-examined the defendant repetitiously and at length. Many of these questions, the first time asked, properly related to the issue of the defendant's credibility (see *People v Duffy,* 36 NY2d 258). The repetition of them, plus the prosecutor's excursions far afield—had the defendant cut classes in high school, were his friends ever in the high school auditorium after it had been closed for the night, were his parents aware that he had been cutting classes, did he steal the lunch money of little children—all convince us of a design to improperly convey criminal propensity to the jury *(People v McKinney,* 24 NY2d 180; *People v Buzzi,* 238 NY 390).

The jury may have been misled as to how to assess the defendant's credibility. The court charged, "The mere fact that the defendant is an interested witness, that in and of itself effects *[sic]* the credibility and the believability of his testimony". That could be interpreted to call for a discount of credibility because of interest. Such would be erroneous (see

*People v Ochs,* 3 NY2d 54, 56) and especially harmful where credibility is the only issue.

Despite the defendant's failure to preserve by objection or exception all of those errors for review, the interests of justice and the exercise of discretion require a reversal and that the case be remanded for a new trial.

NUNEZ, J. (dissenting). I dissent and vote to modify the judgment to the extent of reversing the conviction on the attempted grand larceny count of the indictment and otherwise to affirm. Defendant was arrested fleeing the scene of the crime. The victim positively identified the defendant as one of the individuals who attempted to rob him. As stated by the majority, "to reach a verdict of guilt, the jury had to grant credibility to the victim and deny it to the defendant." The victim's testimony having been believed, the evidence of defendant's guilt is clear *(People v Graham,* 48 AD2d 646). While errors at the trial did occur, they did not prejudice defendant. Where proof of guilt, without reference to the error, is overwhelming, and there does not exist a significant probability, as contrasted with a rational possibility, that the jury would have acquitted the defendant absent the error, the error is not prejudicial *(People v Crimmins,* 36 NY2d 230, 242). Furthermore, the failure of defendant to object to the cross-examination and the introduction of the knife into evidence, or to take exception to the charge, requires an affirmance *(People v Vidal,* 26 NY2d 249; CPL 470.05). As to the attempted grand larceny count, it should be dismissed as a lesser included count in the verdict of guilty to attempted robbery *(People v Pyles,* 44 AD2d 784; CPL 300.40, subd 3, par [b]).

STEVENS, P. J., and MARKEWICH, J., concur with LYNCH, J.; CAPOZZOLI and NUNEZ, JJ., dissent in an opinion by NUNEZ, J.

Judgment, Supreme Court, New York County, rendered on May 24, 1973, reversed, on the law, in the interests of justice and in the exercise of discretion, and the case remanded for a new trial.