■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID SKINNER, Appellant.—Judgment, Supreme Court, New York County, entered June 17, 1974, convicting defendant, upon a jury verdict, of robbery, second degree, and grand larceny, third degree, and sentencing him as a second felony offender to concurrent indeterminate terms of 5 to 10 and 2 to 4 years, respectively, reversed, on the law and the facts, and as a matter of discretion in the interest of justice, the sentences vacated, and a new trial directed for robbery, second degree, and grand larceny, third degree. Defendant was indicted and tried on charges of robbery, first degree, grand larceny, third degree, and possession of a weapon as a felony. The evidence was

closed and the summations delivered, when the court, without prior notice to the attorneys, withdrew from jury consideration the robbery, first count, and submitted the lesser included counts of robbery in the second and third degrees. As the dissent concedes, this failure to give timely notice of the court's intention was procedural error (CPL 300.10, subd 3; 300.30, subd 1; see, also, *People v Jack*, 85 Misc 2d 299). This error and another related hereinafter, although not objected to, warrant a reversal in the interest of justice. The proof was not so suggestive of guilt that a defense summation, given with full knowledge of the precise charges to be submitted, might not reasonably have altered the verdict. The complainant stated that his assailant was wearing a zippered jacket. The defendant, arrested minutes later on the street, was wearing a long coat. Sixty dollars were found on the defendant, while the complainant stated that his wallet had contained $350 when it was stolen and only five dollars were found in it when it was located soon afterward. What the complainant claimed to be a revolver was never found. The complainant's companion could not identify the defendant as the assailant. The defendant denied telling the police where the wallet was and told a version that was logical and would have been exculpatory if believed by the jury. For this court to attempt in a close case to deny, discount, or quantify the prejudice resulting from the trial court's failure to adhere to the command of the Criminal Procedure Law is certainly a speculative indulgence. It requires first an hypothecation of what defense counsel would have stated if he had been informed of the charges to be submitted, and then a judgment of the impact on the jury of that theoretical summation. Such an exercise, the keystone of the dissent, is better foregone for the less subjective alternative of a new trial. (See *People v Moody*, 52 AD2d 959.) The dissent states that "counsel of course knew when he began to sum up that the court had not indicated which counts and offenses it was going to submit. If counsel felt he needed to know that for his summation, all he had to do was ask". This would create an exception to the positive duty imposed on the court by the statute and would be impermissible judicial legislation (McKinney's Cons Laws of NY, Book 1, Statutes, § 73). Reversal is all the more necessary because in cross-examination of the defendant and in summation the prosecution adverted to the defendant's silence when arrested in an attempt to discredit his exculpatory testimony. This was error *(People v Christman*, 23 NY2d 429) and, since the trial was basically a weighing of the complainant's credibility against that of the defendant, the interest of justice should prevail despite the defendant's lack of objection *(People v Winston*, 52 AD2d 432; *People v Jones*, 47 AD2d 761). The trial court's not submitting the robbery, first degree, count to the jury results in a dismissal of that count and it may not be retried (CPL 300.40, subd 7). Concur—Murphy, P. J., Lane and Lynch, JJ.; Lupiano and Silverman, JJ., dissent in the following memorandum by Silverman, J. We would affirm the conviction. We agree of course that pursuant to CPL 300.10 (subd 3) the Trial Judge was required to inform the parties prior to summation of the counts and offenses which he would submit to the jury; and that the District Attorney should not have questioned the defendant about his failure to say to the officer at the time of the arrest that someone else had just gone by, and that defendant was not the robber. But neither of these points was objected to by the defendant and our power to notice them is thus limited to "as a matter of discretion in the interest of justice." (CPL 470.15, subd 6, par [a].) We do not think the interest of justice requires reversal and a retrial. This power should not be exercised "where the proof overwhelmingly established the guilt of defendant." *(People v Jones*, 32

AD2d 1069, 1070, affd 27 NY2d 501, cert den 400 US 994.) The proof of guilt was overwhelming, defendant being apprehended and identified by the victim within minutes after the incident, and defendant having informed the police where the victim's wallet could be found, and the police finding the wallet there. The requirement that counsel object at the time to erroneous procedures serves several functions. For one thing, in a case like the present, it establishes for the record whether or not the error took place. Although it should be done on the record, it is not unknown for a Judge to inform the attorneys at an informal bench conference as to which counts and offenses he is going to submit to the jury. The failure of trial counsel ever to advert to this point leaves it uncertain whether or not the Judge did in fact inform trial counsel of the counts and offenses he was going to submit. But the primary object of the requirement that counsel protest at the time to erroneous or objectionable matter is so that the court shall have "an opportunity of effectively changing the same." (CPL 470.05, subd 2.) This is particularly important since in almost any trial it would be possible to take our detailed Criminal Procedural Law, lay it alongside the record, and find some place where through some inadvertence the two do not jibe. But if the point is of any significance to the parties, counsel can call it to the court's attention and it can be corrected. Frequently counsel do not bother to do this because nothing appears to turn on it. In the present case, counsel of course knew when he began to sum up that the court had not indicated which counts and offenses it was going to submit. If counsel felt he needed to know that for his summation, all he had to do was ask. In fact, counsel said nothing about it. Even after the Judge's charge, counsel only excepted to the submission of "a lesser included, as opposed to the top charge, for the record at this time," without ever suggesting that it was because the court had failed to tell counsel of its intentions prior to summation. The usual basis for such an objection is, of course, that there is no "reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." (CPL 300.50, subd 1.) Nothing in the record suggests that it ever occurred to anyone but appellate counsel that if the Judge had told the trial counsel of its intention of submitting lesser offenses, trial counsel's summation would have been different. In fact, it is perfectly clear that it would not have been different and defendant was in no way prejudiced by this failure. The indictment charged the defendant with the crime of robbery in the first degree as well as grand larceny in the third degree and possession of a weapon as a felony. The Trial Judge did not submit robbery in the first degree; instead, he submitted robbery in the second degree and robbery in the third degree (as well as the other two counts of the indictment). As to robbery in the second degree the elements of the crime which the Trial Judge submitted to the jury are identical with those of the crime charged in the indictment. The indictment charged robbery in the first degree under subdivision 4 of section 160.15 of the Penal Law, i.e., that a person is guilty of robbery in the first degree when he commits a robbery and in the course thereof he "[d]isplays what appears to be a pistol". The robbery in the first degree count of the indictment charged that the defendant "displayed what appeared to be a pistol." The definition of robbery in the second degree under section 160.10 (subd 2, par [b]) of the Penal Law is that a person is guilty of robbery in the second degree when he commits a robbery and in the course thereof he "[d]isplays what appears to be a pistol". It is under this subdivision that the Trial Judge submitted to the jury the crime of robbery in the second degree, reading the definition from the statute. The

only difference between robbery in the first degree and robbery in the second degree under these subdivisions is that it is an affirmative defense to robbery in the first degree under this subdivision that the pistol was not loaded and operable. (This is not a defense to robbery in the second degree, or any other crime [Penal Law, § 160.15, subd 4].) The Judge gave the defendant the benefit of that affirmative defense, although apparently nobody raised it; defendant can hardly complain of that. There was no issue in the case as to whether the gun was loaded and operable. Thus the factual charge that the Trial Judge submitted to the jury is the identical charge contained in the indictment, i.e., that defendant had committed a robbery and in the course of it displayed what appeared to be a pistol. The Judge simply treated that as robbery in the second degree rather than robbery in the first degree. The defense was mistaken identity. Neither defendant's trial counsel nor the District Attorney ever referred to the one element which distinguishes robbery in the first degree from robbery in the second degree under these subdivisions, i.e., whether the gun was loaded and operable. The issue was simply not in the case. But apart from that element, the two degrees are identical. As to the submission of the crime of robbery in the third degree as a lesser offense, again defendant was not prejudiced. He was not convicted of that crime but of robbery in the second degree. Defendant's appellate counsel argues that if trial counsel had known that robbery in the third degree was going to be submitted, he might have argued something different, presumably something that would induce the jury if it was going to convict, to convict of robbery in the third degree rather than robbery in a higher degree. But this speculation of defendant's appellate counsel flies in the face of the fact that defendant's trial counsel objected to submission of robbery in the third degree. And this was part and parcel of the whole theory of the defense. That theory was not concerned with which crimes or degrees were involved. The defense was solely an attack on the basic premise of all conceivable charges arising from the incident; defendant simply was not the perpetrator. Defendant's trial counsel obviously objected to the submission of the lesser count because he did not want the jury to have available a compromise intermediate verdict of guilty of a lesser crime. He did not even discuss in his summation the intermediate charges of grand larceny in the third degree, a class E felony, or possession of a weapon as a felony, a class D felony, both of which were charged in the indictment. He was obviously playing for all or nothing. He wanted the jury to bring in a verdict of not guilty. And in fact the jury did not bring in an intermediate verdict; they convicted of the highest crime submitted to them, robbery in the second degree, a class C felony. So the submission of robbery in the third degree (not complained of on this appeal) and the failure to inform defendant's trial counsel thereof before submission, did not interfere with his defense. Further, the difference between robbery in the first and second degrees and robbery in the third degree is the display of what appeared to be a pistol; that element is an essential element of robbery in the first and second degrees but not of robbery in the third degree. Thus, if defendant's trial counsel believed at the time of summation that the jury would be faced with a choice of guilty of robbery in the first (or second) degree or not guilty, then that would be all the more reason for arguing that an essential element of the higher degree of robbery, the display of what appeared to be a pistol, was not proved. It would not be something that would lead trial counsel to skip argument as to this element. But he did not argue that there was no display of what appeared to be a pistol; his whole point was that defendant was not the

perpetrator. (In fact, defendant's trial counsel did refer in his summation several times to the fact that no gun had been recovered as part of his argument that defendant was not the perpetrator.) Neither attorney in the summation ever even stated the degree of the crime charged. The summations were exactly as applicable to charges of robbery in the second and third degrees as they were to robbery in the first degree, defendant's trial counsel's summation being entirely an argument on mistaken identity. *People v Moody* (52 AD2d 959), in which the court held that it was reversible error for the trial court not to inform counsel before summation that it was going to submit the lesser offense of assault in the second degree when the indictment charged manslaughter, is clearly distinguishable. To begin with, a defendant charged with manslaughter, in which causing the death of the victim is an essential element, might well not expect that the jury would be permitted to convict him of a crime not involving causing death, a crime that is not even a lesser degree of the crime charged, homicide, but a different crime, assault. In the case at bar however, defendant's trial counsel could hardly have been surprised by the submission of robbery in the third degree. It has been the general practice to submit lesser degrees of the same crime, particularly robbery in the third degree as a lesser degree under a charge of robbery in the first degree when there was any question as to the use of a weapon, as long as there has been a rule of lesser included crimes in this State. Furthermore, the defendant in the *Moody* case was convicted of the lesser offense—assault in the second degree—so that he was plainly prejudiced by the failure to be informed that the court was going to submit that lesser offense. In the case at bar, the defendant was not convicted of the lesser offense. He was convicted of the greater offense of robbery in the second degree, factually identical with the "top charge" in the indictment. The case thus seems to us quite analogous to *People v Vicaretti* (54 AD2d 236, 250) where the court said: "To assume, as defendant contends, that the entire theory of the defense and, therefore, of defendant's summation would have been altered had he known of the intended charge * * * is specious and we conclude under the facts of this case, that the failure to so inform him did not result in a denial of his right to an effective summation." Again, with respect to the District Attorney's improper questioning of defendant as to his silence, if objection had been made at the time the court could have corrected the matter by stopping these questions and by a proper instruction to the jury. (As is not unusual, both attorneys were at times overzealous. And perhaps their respective overzealousness balanced out. Thus defendant's attorney several times in his summation gave his personal opinion as to the credibility of a witness or as to his client's innocence. (Cf. Code of Professional Responsibility, EC 7-24.) Finally, we note the observations of the Court of Appeals in *People v Crimmins* (36 NY2d 230, 241): "The ultimate objective, grounded in sound policy considerations, is the wise balancing, in the context of the individual case, of the competing interests of the defendant and those of the People." On the whole, we think defendant received what he was entitled to, a fair though not perfect trial. Our faltering criminal justice system can ill afford retrials because of nonprejudicial errors not called to the attention of the trial court and which could have been corrected if called to the trial court's attention.