■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE VALENTIN, Appellant.—Judgment, Supreme Court, New York County, rendered August 3, 1976, convicting defendant of a criminal sale of a controlled substance in the second degree (Penal Law, § 220.41) and sentencing him to six years to life, unanimously reversed, on the law, and remanded for a new trial. The defendant Valentin and two others were sentenced to a mandatory indeterminate term of imprisonment of from six years to life following their conviction of one count of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41) in connection with the sale of a little over one eighth of an ounce of a substance containing heroin. The principal prosecution witness was DEA Agent Martinez. Martinez testified

in substance that an informant introduced him to a man named Del Valle who offered to sell him 10 $10 bags of heroin for $93. When Martinez agreed, Del Valle said that Martinez would have to speak to his "man," Valentin. Valentin in turn stated that if Martinez wished to purchase drugs it would have to be done at Valentin's social club. The defendant, Del Valle and Martinez walked down the street to the club which they entered. In the club, Valentin went to a counter, paused for a moment, and then accompanied Martinez into a back room. In the room, Valentin displayed a manila envelope from which he removed 15 packets, opening one, telling Martinez to examine it. He quoted a price of $140 for the 15 packets to which Martinez agreed. Valentin then said that he would have to get the man to whom the heroin belonged. After several minutes, Valentin returned to the area with a man named Vega. Vega had in his hand a manila envelope that appeared to be the envelope previously displayed. Valentin said that Martinez would have to pay Vega, and left the area. Martinez then received the heroin and paid Vega $140. The agent left the social club and radioed his back-up officers who entered the club where Martinez identified the defendant, Del Valle and Vega, who were arrested and searched. None of them was in possession of heroin or any of the proceeds of the transaction. The purchase money was found in a trash can in the back room, together with other money. The defendant Valentin testified and denied any involvement in the transaction, acknowledging only that Martinez had asked him about buying narcotics and had been rebuffed. Valentin's lawyer requested the court to submit to the jury as a lesser included offense criminal facilitation in the second degree. (Penal Law, § 115.05.) The trial court declined to do so, stating that there was no reasonable view of the evidence that would sustain a conclusion that the defendant facilitated the sale that would not also sustain the charge of sale. We disagree, and hold that the failure to submit criminal facilitation as a lesser included count was error, requiring reversal of the conviction. Criminal facilitation in the second degree is defined as follows (Penal Law, § 115.05): "A person is guilty of criminal facilitation in the second degree when, believing it probable that he is rendering aid to a person who intends to commit a class A felony, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit such class A felony." In *People v Lewis* (68 AD2d 862), this court held, and the District Attorney does not now dispute, that criminal facilitation is a lesser included count of an indictment charging sale of a narcotic drug. The statutory test for submission of a lesser included offense is whether "there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater." (CPL 300.50, subds 1, 2.) The controlling rules of law were set forth by the Court of Appeals in *People v Henderson* (41 NY2d 233, 236): "To warrant a refusal to submit it [the lesser included offense] 'every possible hypothesis' but guilt of the higher crime must be excluded *(People v Shuman,* 37 NY2d 302, 304, *supra; People v Malave,* 21 NY2d 26), the evidence for that purpose being required to be considered in the light most favorable to the defendant *(People v Battle,* 22 NY2d 323) since the jury is free to accept or reject part or all of the defense or prosecution's evidence *(People v Asan,* 22 NY2d 526; *People v Valle,* 15 NY2d 682, revg on dissent at App Div 21 AD2d 765)." When the trial evidence is evaluated in terms of these principles, it is readily apparent that the jury could reasonably have assessed the evidence in a manner that would have justified acquittal of the defendant on the sale count and his conviction on the proposed lesser count. (See *People v*

*Lewis, supra.)* Concur—Sandler, Sullivan and Markewich, JJ.; Kupferman, J. P., concurs in the result only, and Bloom, J., concurs in a memorandum as follows.

Bloom, J. (concurring). While I agree with my brethren that there must be a reversal of the judgment of conviction, I would place my concurrence on the limited ground that the absence of an adequate record precludes review of the judgment before us. We are informed that the stenographic minutes of one full day of the trial—the testimony of May 25, 1975—are missing. On that day all of the defendant's witnesses, including the defendant himself, testified. A reconstruction hearing was held on November 8, 1978, almost two and one-half years later. In large part, it drew upon the summation of counsel, the charge and the information attached to the indictment. Motions made on the day in question are missing from the reconstructed record as are evidentiary rulings and requests to charge. Although it may have been possible to reconstruct the testimony of the witnesses with a greater or lesser degree of accuracy, based on the "evidence" as recited in the summations of counsel, there is dispute among the attorneys as to whether requests were made for charges on criminal facilitation—the ground relied upon by my brethren for reversal—and the defense of agency. We are thus left with a record so imperfect that we cannot say whether or not appealable issues were preserved for review. Under these circumstances, we have no alternative but to reverse and remand for a new trial.